UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

------------------------------------------------------- X

| | |
|---|---|
| IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND RELEVANT PRODUCTS LIABILITY LITIGATION | 3:09-md-02100-DRH-PMF<br><br>MDL No. 2100 |
| -------------------------------------------------------<br>This document relates to:<br><br>*Plaisance v. Bayer Corp., et al.,*<br>No.3:09-cv-20108-DRH-PMF | Judge<br><br>David R. Herndon<br><br>ORDER |

# ORDER

## I. Introduction

**Herndon, Chief Judge:**

        Now before the Court is defendants'[1] motion to strike or dismiss(Doc. 27), and memorandum in support thereof (Doc. 28),the class allegations in plaintiff's first amended complaint (Doc. 23). Plaintiff seeks certification of a Rule 23(b)(3) nationwide

---

[1] Bayer Corporation, Bayer HealthCare LLC, and Bayer HealthCare Pharmaceuticals Inc., formerly known as Berlex, Inc., formerly known as Berlex Laboratories, Inc., on its own behalf and as successor by merger to Bayer Pharmaceuticals Corporation (Doc. 27).

1

or statewide class of individuals who allegedly suffered injury[2] as a result of ingesting YAZ and/or Yasmin. In addition, in her first amended complaint, plaintiff identifies 26 putative "common issues," (doc. 23 ¶ 109), and alleges that certification under Rule 23(c)(4)(A) may be appropriate "with respect to [the 26 putative common issues] or [other common issues] to be developed in the course of the litigation." *Id.* ¶ 114.

Having considered the parties briefs and the relevant authority, the Court finds that individual issues of fact and law predominate precluding certification of any of the proposed classes. Accordingly, for the reasons discussed herein, the Court **GRANTS** defendants' motion (Doc. 27) and **STRIKES** the class allegations in plaintiff's first amended complaint.

## II. BACKGROUND

### A. Plaintiff

Plaintiff is a 44-year-old citizen of the State of Louisiana who was prescribed YAZ in May of 2006 by her physician, Dr. Eugenio C. Labadio (Doc. 23 ¶ 42, Doc. 32 § II). During the summer of 2006, plaintiff was hospitalized due to a deep vein thrombosis ("DVT") in her left leg (Doc. 32 p. 2). Plaintiff alleges that the DVT, as well as other adverse effects, were caused by her ingestion of YAZ (Doc. 23 ¶ 42) (alleging that plaintiff "purchased, used, and suffered adverse effects including, but not limited to a blood clot and deep vein thrombosis from ingesting YAZ®/Yasmin®"); (Doc. 23 ¶ 108)

---

[2] As is discussed later in this Order, plaintiff's first amended complaint is somewhat inconsistent with regard to the types of injuries included in her class definition.

(asserting that plaintiff purchased and ingested YAZ/Yasmin and developed deep vein thrombosis).

## B. First Amended Complaint

### 1. Putative Class Definitions

Plaintiff asserts that the action is brought on behalf of the "Personal Injury Class" defined initially as "all persons residing in the United States who purchased YAZ®/Yasmin®" (Doc. 23 ¶ 11). On several subsequent occasions, plaintiff sets forth additional paragraphs describing the putative class as including persons that have suffered from any and all possible YAZ or Yasmin-related injuries *Id.* ¶¶ 21, 88-95, 98-99.³ In paragraph 105, of the complaint, however, plaintiff states that the putative nationwide class is limited to persons who suffered from DVT.⁴ As an alternative to the putative nationwide class, plaintiff

---

³ For example, in ¶ 21 of her first amended complaint, plaintiff indicates that the putative class includes individuals who, as a result of their use of YAZ/Yasmin, have suffered and/or will continue to suffer and/or are at greatly increased risk of:

> serious and dangerous side effects including, <u>interalia</u>, heart arrhythmias, myocardial infarction, and other adverse cardiovascular events, including, stroke, transient ischemic attack, blood clots, embolisms, kidney and gallbladder disease and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff Plaisance's and the Personal Injury Class' inability to use any form of prescription contraception for the duration of their lives, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

(Doc. 23 ¶ 21).
⁴*See* Doc. 23 ¶ 105, which states:

proposes certification of a statewide class (limited to persons who suffered from DVT); asking the Court to certify separate classes for the 50 states and the District of Columbia. *Id.* at ¶106.

For 49 of the states and the District of Columbia, the name of the statewide class representative is "Intentionally left blank." *Id.* ¶¶ 24-74. Plaintiff asserts that she can act as a surrogate representative of these classes, until plaintiffs who actually would be members of the statewide classes turn up:

> Plaintiff Plaisance, as representative for the national class, acts as a surrogate for those state classes (defined above) for which there is yet a nominal class representative plaintiff, i.e., a headless class. By interlineation, plaintiff will cause to have substituted appropriate class representatives as their claims are filed and transferred to MDL 2100 pursuant to 28 U.S.C. § 1407.

*Id.* ¶ 112.

Plaintiff also lists 26 putative "common issues," *id.* ¶ 109, and alleges that certification under Rule 23(c)(4)(A) may be appropriate "with respect to [the

---

Plaintiff Plaisance will seek certification of a nationwide personal injury class defined as follows:

All citizens, residents, or domiciliaries in the United States who took YAZ®/Yasmin® during the period of time between February 13, 2005 and the date of Class Notice in any dose *who claim personal injuries for deep vein thrombosis* arising from ingestion of YAZ®/Yasmin® and such citizens', residents' and domiciliaries' estates, representatives, administrators, spouses, children, relatives, and "significant others" as their heirs or survivors. Specifically excluded from the Class are the Defendants, their officers, directors and employees, and any entity in which the Defendants have a controlling interest, the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact or assignees of the Defendants, any federal, state or local entity.

(emphasis added).

26 putative common issues] or [other common issues] to be developed in the course of the litigation." *Id.* ¶ 114.

### 2. Asserted Claims

Plaintiff asserts claims for negligence, strict product liability, breach of express warranty, breach of implied warranty, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and fraud and deceit. *Id.* ¶¶ 117, 130, 155, 167, 179, 192, 205, 213, 299. With regard to damages, plaintiff seeks compensatory and punitive damages, medical monitoring, and attorneys' fees. *Id.*

Plaintiff's claims are all pled under the common law. The plaintiff, however, is a resident of and was allegedly injured in Louisiana. *Id.* ¶¶ 42, 106(xix). Louisiana does not follow the common law. *See* La. Rev. Stat. Ann. § 9:2800.52 (Louisiana Products Liability Act establishes "the exclusive theories of liability for manufacturers for damage caused by their products").

Later in the complaint, plaintiff includes a section titled "Ascription of Claims," which may be intended to plead the law that would apply to each of the putative statewide classes. *Id.* ¶¶ 248-97.Some of these allegations contain question marks. *See, e.g.*, *id.*¶ 270 (Michigan law); *see also id.* ¶ 266 (question marks in paragraph concerning Louisiana law).

## C. The Parties' Arguments

Defendants argue that the class allegations are facially deficient and should be stricken from plaintiff's first amended complaint because the putative classes cannot

satisfy the requirements of Federal Rule of Civil Procedure 23(a) and 23(b) (*See generally,* Doc. 28). Defendants contend that class certification under Rule 23(b)(3) and/or "issue" certification under Rule 23(c)(4) would be inappropriate because each of plaintiff's claims involve individualized questions of fact concerning each putative class member's medical history and use of the subject drug as well as individualized questions of law. *Id.*at pp. 7-13.Defendants further state that the predominance of individual issues of fact and law would make any nationwide class or statewide class unmanageable. *Id.* at pp. 14-15. In addition defendants contend plaintiff is not an adequate representative for any of the proposed putative classes. *Id.*at p. 16.

Plaintiff filed a response in opposition that fully briefs the issue of class certification (Doc. 32).[5]Plaintiff's opposition brief advances arguments with regard to the certification of a Rule 23(b)(3) nationwide or statewide class; it does not address "issue" certification under Rule 23(c)(4). Plaintiff maintains that the putative nationwide and state wide classes meet the requirements of Rule 23(a) and 23(b)(3). In addition, plaintiff contends that the unitary application of the law of Louisiana is appropriate and resolves issues related to the application of the substantive laws of multiple jurisdictions (*See* Doc. 32 p. 2) (putative classes can be certified "consistent with Rule 23 jurisprudence by unitary application of the law of one state. As a U.S. corporate citizen, Bayer can and should not only be expected to be brought into court, but to be held accountable and required to defend itself against claims from all persons in the United States."). (*See also* Doc. 23 ¶ 105) (stating that the putative class allegations can be

---

[5] Plaintiff has had ample time to address the defendants' arguments; plaintiff was given additional time to fully brief the matter (Doc. 31).

resolved "through the unitary application of Louisiana law" and asserting that "as long as no out-of-state plaintiff gets less protection under its states' laws and Defendants are subject to Louisiana law, there should be no objection to the unitary application of Louisiana law.").

## III. ANALYSIS

### A. Timing of Defendants' Motion to Strike or Dismiss

Plaintiff contends that defendants' motion to strike or dismiss is premature because the filing of other class actions in states across the country could somehow resolve the deficiencies identified by the defendants (Doc. 32 p. 8). Otherwise plaintiff does not raise any objections with regard to the timing of defendants' motion. In particular, plaintiff does not contend that discovery would resolve the identified deficiencies in the class allegations or that the Court cannot obtain a full assessment of the litigation at this time.Instead, plaintiff contends that her class allegations are adequate.

In the instant case, defendants have identified numerous facial deficiencies in the class allegations; no amount of time or discovery can cure these deficiencies. Plaintiff's argument with regard to the filing of additional class actions in other states is unavailing for the same reason. After reviewing the parties' briefs and the allegations in the first amended complaint, it is obvious from the pleadings that no class action can be maintained. Accordingly, the Court properly proceeds with its ruling on defendants' motion to strike or dismiss plaintiff's class allegations. *See* Rule 23(c)(1)(A) (providing

that the court, "[a]t an early practicable time ..., must determine by order whether to certify the action as a class action"); Rule 23(d)(1)(D) ("In conducting an action under this rule, the court may issue orders that ... require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."). *See also e.g.*, *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, *1 (N.D. Ill. Nov. 30, 2010) (Gettleman, J.) (consideringdefendant's motion to strike class allegations and noting that the "early practicable time" directive indicates that "courts may-and should-address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained").

**B. Overview**

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. First, plaintiffs must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Failure to meet any one of these four requirements precludes class certification. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir.2006). Further, plaintiffs must satisfy at least one provision of Rule 23(b). In the instant case, plaintiff seeks monetary damages and therefore must satisfy the predominance and manageability requirements of Rule 23(b)(3).[6]

Here, the Court's analysis begins and ends with Rule 23(b)(3); it is evident that individual questions of law and fact predominate, and therefore the

---

[6] Plaintiff does not assert that she is seeking certification under either Rule 23(b)(1) or Rule 23(b)(2). She specifically argues for certification of a Rule 23(b)(3) class.

8

case is not manageable as a nationwide or statewide class action. Given that the putative classes do not meet Rule 23(b)(3)'s predominance and manageability requirements, the Court need not address whether the putative classes meet Rule 23(a)'s requirements.[7]

Rule 23(b)(3)'s predominance and manageability requirements also preclude any proposed "issue" certification under Rule 23(c)(4).[8] To the extent that plaintiff seeks "issue" certification under Rule 23(c)(4), the Court is not convinced that the "common issues" identified in the first amended complaint (or common issues that plaintiff suggests might emerge as the case progresses) are appropriate for class treatment. In the instant case, the same individual questions of law and fact that preclude certification of the nationwide or statewide putative classes as a whole, preclude issue certification under Rule 23(c)(4).

## C. Rule 23(b)(3)

### 1. Requirements

---

[7] The Court notes that the putative classes do not meet all four requirements of Rule 23(a). In particular, as defendants' argue in their briefing, plaintiff is not an adequate representative of any of the proposed putative classes: (1) Plaintiff cannot represent individuals suffering from different injuries (to the extent the complaint purports to include persons suffering from non-DVT injuries); (2) Plaintiff cannot represent a nationwide class because she is neither an adequate nor typical representative of persons whose claims arise under the laws of different states; (3) plaintiff cannot represent classes from states other than Louisiana because she is not a member of those classes; (4) plaintiff cannot represent a Louisiana class of persons who allegedly suffered DVTs because she asserts common law claims, which Louisiana does not recognize, and her claims are therefore subject to dismissal (*See* Doc. 28 pp. 15-17).

[8] The Court notes that plaintiff does not address "issue" certification in her brief. Because plaintiff carries the burden of establishing that the class allegations meet Rule 23's requirements, absence of any argument in her brief on this point could be a basis, in and of itself, for denying any proposed "issue" certification.

9

To satisfy the requirements of Rule 23(b)(3), the plaintiff must show that common questions of factor law predominate over individual questionsand that class treatment is superior to other available methods of adjudication.Fed. R. Civ. P. 23(b)(3). Assessing the predominance factor requires consideration of the substantive elements of a plaintiff's claims and the proof necessary to establish those elements. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 673-674, 677-678 (7th Cir. 2001); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015-1019 (7th Cir. 2002). In addition, a court must consider issues pertaining to manageability and choice of law. *See Id.* Generally, because of the inherent difficulties associated with managing an action involving a multitude of individual issues, where individual issues predominate, class treatment is not a superior method of adjudication. *See Id.*

### 2. Individual issues of law predominate, precluding certification of the putative nationwide class

The commonality and superiority requirements Rule 23(b)(3) cannot be met unless all litigants are governed by the same legal rules. *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1015. In the instant case, under applicable choice of law rules, the merits of the putative class members' claims would be governed by the substantive law of each class member's home state.[9]

---

[9]This action was transferred from the United States District Court for the Eastern District of Louisiana (Doc. 1 & Doc. 4). Therefore, Louisiana choice of law rules govern the complaint. *See Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010). Under Louisiana's codified choice of law rules, the substantive law of each plaintiff's home state would govern the merits of the case. *See* La. Civ. Code art.3515; La. Civ. Code art. 3542. *See also In re Vioxx Prods.*

Accordingly, the laws of all fifty states plus the District of Columbia would be applicable to the putative nationwide class members' claims. Amongst the states, there are differences in the law of product liability as well as in the applicable theories of recovery and their subsidiary concepts. These differences, even if slight, are not insignificant. *See e.g.*, *Rhone-Poulenc Rorer Inc.,* 51 F.3d 1293, 1300-1301 (7th Cir. 1995). Indeed, "such differences have led [the Seventh Circuit] to hold that other warranty, fraud, or products-liability suits may not proceed as nationwide classes"). *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1015.*See also e.g.,Isaacs v. Sprint Corp.*, 261 F.3d 679 (7th Cir.2001); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir.2001); *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293 (7th Cir.1995).

Plaintiff asserts "that the unitary application of Louisiana law" solves any problem with regard to variance in substantive state law (Doc. 23 ¶ 105). As defendants correctly counter, the Seventh Circuit has rejected such an approach. For instance, in *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995), the Seventh Circuit concluded that the district court abused its discretion in certifying a nationwide classand held that variation amongst the states in the law of negligence could not be overcome by application of a "general common

---

*Liab.Litig.*, 478 F. Supp. 2d 897, 905-06 (E.D. La. 2007) (Fallon, J.) (applying Louisiana choice of law rules and concluding that the substantive law of each plaintiff's home state would govern in a pharmaceutical product liability action).

law." *Id.* at 1297-1302.[10] In so holding, the court explained that doing so would subvert the *Erie* doctrine. *Id.* at 1300-1302.

The Seventh Circuit reached a similar conclusion in *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1020 (7th Cir.2002). In *Bridgestone/Firestone* the district court, knowing that "uniform law would be essential to class certification," held that the putative nationwide classes (owners of vehicles equipped with allegedly defective tires) could be maintained because the governing choice of law principles required application of the substantive law of the state where the particular defendant was headquartered (resulting in the application of Tennessee law to one nationwide class and Michigan law to a second nationwide class). *Id.* at 1014-1015. The Seventh Circuit disagreed; the court held that the relevant choice of law rules required application of the law of the fifty states and multiple territories. *Id.* at 1015-1018. Because the claims "would have to be adjudicated under the laws of so many jurisdictions, [the Seventh Circuit concluded] a single nationwide class [was] not manageable." *Id.* at 1018.

In so holding, the court noted that in the class action context differences in state law cannot be swept away by electing to apply the law of a single state to all class members' claims. *See Id.* at 1017-1020. The Appellate Court explained that although the unitary application of a single state's law might promote efficiency, it would also constitute an unacceptable violation of principles

---

[10] *Rhone-Poulenc Rorer* involved class certification under Rule 23(c)(4). The principles discussed therein apply equally to certification under Rule 23(b)(3).

12

of federalism.  *See Id.* at 1020 ("Differences across states may be costly for courts and litigants alike, but they are a fundamental aspect of our federal republic and must not be overridden in a quest to clear the queue in court.Tempting as it is to alter doctrine in order to facilitate class treatment, judges must resist so that all parties' legal rights may be respected.") (citations omitted).  *See also Id.* at 1018 ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules."); *Id.* at 1020(in making decisions about class certification, district courts must avoid doing "violence not only to Rule 23 but also to principles of federalism").

Here, because governing choice of law principles require application of the substantive laws of the fifty states and the District of Columbia – laws which vary amongst the jurisdictions – the case cannot be maintained as a nationwide class action.  Further, as discussed above, the law of this Circuit clearly provides that the Court cannot ignore differences in state law in order to facilitate class treatment.  Accordingly, the Court rejects plaintiff's contention that a nationwide class action can be maintained by applying the law of Louisiana to all putative class members' claims.

**3.  Individual issues of fact predominate, precluding certification of the putative nationwide class and of the putative statewide class**

Establishing the requisite elements of product liability claims sounding in strict liability, negligence, warranty, and/or fraud generally requires fact intensive inquiries unique to each plaintiff(such as questions related to

causation, injury, affirmative defenses, and damages). Accordingly, mass product liability suits are rarely sustainable as class actions. *See e.g.*, *Szabo*,249 F.3d at 674, 677-678 (cases sounding in warranty and fraud are rarely appropriate for class certification because individual questions, such as content of oral representations, are generally predominant). *See also Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 747-748 (7th Cir. 2008); *In re Bridgestone/Firestone,* 288 F.3d at 1018; *Rhone-Poulenc Rorer,* 51 F.3d at 1296-1297.

In the instant case, almost every element of the asserted claims will require highly individualized factual inquiries unique not only to each class member but also to each class member's prescribing physician. For example, as defendants' brief highlights, establishing causation will require (1) an examination of each class member's medical history, including pre-existing conditions and use of other medications; (2) an evaluation of potential alternate causes for the alleged injury; and (3) an assessment of individualized issues pertaining to each class member's prescriber, including how the doctor balances the risks and benefits of the medicine for that particular patient, the particular doctor's prescribing practices, the doctor's knowledge about the subject drug, and the doctor's sources of information with regard to the subject drug (Doc. 28 pp. 7-10).

Establishing elements of the fraud and warranty claims will also turn on facts unique to each plaintiff, particularly with regard to questions of materiality and reliance. *See Thorogood,* 547 F.3d at 747-748 (variance in

meaning each class member attached to allegedly deceptive advertisement was a "deal breaker" with regard to class certification). As defendants note in their brief, individualized questions relevant to these claims and subsidiary issues might include whether each class member saw a particular representation, whether the representation related to the medicine ingested by the particular class member, and/or whether the representation was a factor in the decision making process (Doc. 28 p. 9).[11]

Considering the case-specific questions discussed above, it is evident that individual issues of fact predominate. Accordingly, certification of the proposed nation-wide class would be improper. *See e.g., Thorogood* 547 F.3d at 747-748; *Szabo,* 249 F.3d at 674, 677-678. *See also Rhone-Poulenc Rorer,* 51 F.3d at 11296-1297 (decertifying Rule 23(c)(4) class of hemophiliacs alleged to have contracted HIV following infusion of defendants' blood products and commenting that the "differences in the date of infection alone" would have made certification under Rule 23(b)(3) improper). In addition, the same individual questions of fact preclude certification of the putative statewide class. *See Bridgestone/Firestone,* 288 F.3d at 1018 (rejecting nationwide class and suggesting that statewide certification would be improper due to predominance of individual issues of fact).

### D. Certification of Putative Common Issues Under Rule 23(c)(4) is not Appropriate

---

[11]Defendants also note, and the Court agrees, that determining the relief to which class members are entitled would require individual proof.

The first amended complaint lists 26 putative common issues that purportedly could be maintained as nationwide or statewide class actions under Rule 23(c)(4)(Doc. 23 ¶ 109 (listing putative common issues); Doc. 23 ¶ 114 (stating that "[c]lass certification of the [26 putative common issues] may also be appropriate pursuant to Fed.R.Civ.P. 23(c)(4)(A) with respect to particular issues setforth above or to be developed in the course of the litigation")).

Rule 23(c)(4) states: "When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." Seventh Circuit jurisprudence indicates that Rule 23(b)(3)'s requirements of predominance and manageability are applicable to "issue" certification under Rule 23(c)(4). Of primary importance is the Seventh Circuit's decision in *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293 (7th Cir. 1995).

In *Rhone-Poulenc*, the trial court certified a nationwide class of hemophiliacs infected with the AIDS virus as a result of allegedly negligent screening of blood solids by manufacturers. The district court declined to certify the action under Rule 23(b)(3) but granted certification under Rule 23(c)(4); the court concluded that the question of negligence could be determined in a class context and the remaining issues could be individually adjudicated. The "core" of the district court's certification ruling was a "belief that the definition of ordinary negligence is substantially identical in all jurisdictions. Therefore, a class trial of

16

the negligence issue (excluding issues of proximate cause and damages) would be dispositive of the negligence claim if defendants prevailed and useable collaterally in other jurisdictions in the event of a plaintiffs' verdict." *In re Factor VIII of IX Concentrate Blood Products Litigation,* 2005 WL 497782, 1 (N.D. Ill. March 1, 2005) (not reported) (Grady, J.).

The Seventh Circuit disagreed and issued an extraordinary writ of mandamus to decertify the class. The Appellate Court rejected the contention that a "general" common law of negligence could be applied. *Rhone-Poulenc Rorer,* 51 F.3d at 1300-1302. Instead, applying *Erie*, the court concluded that the negligence laws of 51 jurisdictions – which differ from state to state – would be applicable. *See Id.* Ultimately, the Appellate Court concluded that class treatment was not appropriate, in part, because the multiplicity of laws applicable to the question of negligence precluded a finding of predominance or manageability.*Id.*[12]

---

[12] The Court notes that there is disagreement amongst district courts with regard to whether, under Rule 23(c)(4), the predominance evaluation is a limited inquiry, focusing only on the individual issue for which class treatment is sought, or requires consideration of the cause of action as a whole. *See e.g., In re Fedex Ground Package System, Inc., Employment Practices Litigation*, 2010 WL 1652863, *1-2 (N.D. Ind. Apr. 21, 2010) (not reported) (Miller, J.); *In re General Motors Corp. Dex-Cool Prods.*, 241 F.R.D. 305, 313-314 (S.D.Ill.2007) (Murphy, J.).The Fifth Circuit Court of Appeals has been critical of district courts that fail to consider the case as a whole when evaluating predominance under Rule 23(c)(4). *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n. 21 (5th Cir. 1996):
> A district court cannot manufacture predominance through the nimble use of subdivision (c)(4). The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial.... Reading rule 23(c)(4) as

In the instant case, the putative common issues include matters such as whether the subject drugs were defective, whether the defendants are strictly liable, whether the defendants conduct constitutes negligence, and whether the defendants failed to give adequate warnings. *See Id.* These putative common questions are enmeshed with the same individual issues of law and fact discussed with regard to certification of the putative class as a whole. As to individual issues of fact, the allegedly common issues and their subsidiary concepts (such as causation, duty of care, and reliance) present questions that can only be answered by considering facts that are unique to each putative class member and her prescribing physician. As to individual issues of law, resolution of the putative common issues is governed by the substantive laws unique to each putative class member's home state, which are not uniform bodies of law. Accordingly, individual issues predominate and the proposed issues are not manageable as class actions.

---

> allowing a court to sever issues until the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of rule 23(b)(3); the result would be automatic certification in every case where there is a common issue, a result that could not have been intended.

On the other hand, an opinion out of the Ninth Circuit Court of Appeals indicates that an issue-specific predominance test is appropriate. *See Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir.1996) (stating that "[e]ven if common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues.") (citations omitted). The Seventh Circuit has not spoken on the matter. In the instant case, however, the Court finds that individual questions of law and fact predominate the putative common issues as well as the case as a whole; therefore, the Court need not resolve the matter for purposes of this Order.

In addition, many – if not all – of the proposed common issues cannot be certified without triggering the Seventh Amendment concerns discussed in *Rhone-Poulenc Rorer*. *See Rhone-Poulenc Rorer*, 51 F.3d at 1303 ("[T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."). In *Rhone-Poulenc Rorer*, the Appellate Court concluded that allowing the issue of negligence to proceed as a class action would be "inconsistent with the [Seventh Amendment] principle that the findings of one jury are not to be reexamined by a second, or third, or nth jury." *Id.* at 1303. The court explained that pursuant to the district court's plan for adjudication, the initial jury would not completely resolve the issue of liability. *Id.* Instead, it would render a decision as to whether a particular defendant acted negligently. Subsequently, multiple juries in follow-up trials would have to examine such issues as comparative negligence and proximate cause; this plan, the court explained, would violate the Seventh Amendment because it would necessitate a reexamination of the issues determined by the initial jury. *Id.* The same is true with regard to the putative issues identified in plaintiff's first amended complaint (*See e.g.*, Doc. 23 ¶ 109 n) (putative common issue regarding whether defendants were negligent).

## IV. CONCLUSION

Given the predominance of individualized issues of fact and law and for the additional reasons discussed herein, the Court concludes that class certification

of any of the proposed classes would be inappropriate. Accordingly, for the reasons discussed herein, the Court **GRANTS** defendants' motion (Doc. 27) and **STRIKES** the class allegations in plaintiff's first amended complaint.

**SO ORDERED:**

Digitally signed by David R. Herndon
Date: 2011.05.04 11:36:38 -05'00'

**Chief Judge**
**United States District Court**  DATE: May 4, 2011